UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| AQUILA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-08-64-B-W |
| | ) | |
| CITY OF BANGOR, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ADOPTING IN PART AND REJECTING IN PART THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE**

Aquila, LLC, an aircraft leasing and resale company, brought suit against the city of Bangor, operator of Bangor International Airport, to recover damages resulting from the City's alleged breach of a service contract. Before the Court are cross-motions for summary judgment, which the Court referred to the Magistrate Judge for a recommended decision. The Magistrate Judge recommended that the case proceed to trial on both liability and damages, and that the Court conclude as a matter of law that a certain portion of Aquila's claimed damages are unrecoverable. Because the Court concludes that partial summary judgment on the issue of liability alone is warranted and disagrees in part with the Magistrate Judge's conclusion on damages, the Court rejects in part and adopts in part the Magistrate Judge's recommended decision.

**I.    STATEMENT OF FACTS**

In May, 2007, while at an air show in Geneva, Switzerland, Aquila agreed to sell a 1994 Canadair Challenger 601-3R aircraft to Aero Toy Stores (Aero) without a pre-buy inspection for $12 million. Following the air show, Aquila flew the aircraft from Europe to the United States

where the sale was to take place. The aircraft landed at Bangor International Airport to clear customs and to refill the aircraft's lavatory fluid. Airport attendants, employees of the City, accidentally pumped roughly one hundred gallons of lavatory fluid—a known corrosive potentially harmful to aircraft and aircraft components—into the tank of Aquila's aircraft, which is designed to hold approximately 7.1 gallons. The excess corrosive fluid flooded the aircraft, and according Aquila, ruined avionics, many of which are located low in the aircraft, and required very costly disassembly, inspection, and repair.

Aero soon backed out of the handshake deal with Aquila to buy the aircraft. After spending various sums on repairs, inspections, and carrying costs, Aquila sold the aircraft in December 2007 for $11,200,000—$800,000 less than Aero had agreed to pay. Aquila sued the City alleging that a service contract existed between it and the City pursuant to which the City promised to service Aquila's aircraft, that the City breached the contract, and that Aquila suffered damages as a result of the City's breach. It claims that the overfill was the result of poorly maintained equipment, poor training, sloppy operations, and a failure to recognize the problem as it developed. Aquila includes among its damages (1) a reduction in the value of its aircraft, (2) costs for necessary repairs, inspections, and incidentals, (3) a lost opportunity to sell the aircraft in the Aero transaction, and (4) carrying costs of interest and insurance it would not have incurred but for the lost sale. *Compl.* ¶ 31 (Docket # 1).

Both parties moved for summary judgment. Pointing to record evidence probative of a contract, breach, causation, and damages, Aquila sought summary judgment in the amount of $1,475,671.74. *Aquila, LLC's Mot. for Summ. J.* at 7 (Docket # 27) (*Aquila's Mot.*). According to Aquila, this measure of damages would place it in the same position it would have occupied had there been no breach. *Id.* The City's motion was considerably less straight-forward.

2

Curiously, it trained its sights exclusively on damages. *Mot. of the Def. City of Bangor, Maine, for Summ. J.* at 1 (Docket # 33) (*City's Mot.*). The City sought summary judgment that (1) Aquila may not recover the money it spent on repairs immediately following the City's servicing of the aircraft because Aquila's insurer had already reimbursed Aquila for this loss; (2) Aquila may not recover any damages flowing from the lost Aero transaction; and (3) the City is entitled, in any event, to a "set-off" against Aquila's damages in the amount of $498,333.34 on account of lease payments that Aquila received during the period following the servicing incident up to the December sale. *Id.* at 1-2.

The Court referred the cross-motions to the Magistrate Judge, who recommended that the Court deny Aquila's motion and grant the City's motion in part. *Recommended Decision on Mots. for Summ J. and Mem. of Decision on Mots. to Exclude* at 21 (Docket # 75) (*Rec. Dec.*).[1] Specifically, with respect to Aquila's motion, the Magistrate Judge concluded that although the record may compel a finding of breach as a matter of law, material facts relevant to damages remain in dispute. She therefore recommended that summary judgment is inappropriate. *Rec. Dec.* at 20. With respect to the City's motion, the Magistrate Judge recommended that the Court enter judgment as a matter of law that Aquila may not recover costs for which it has already been reimbursed by its insurer, and that Aquila may not recover the profit it would have realized had it sold the aircraft to Aero as planned, because that profit constitutes special damages that the City had no reason to foresee. *Id.* at 16-18. However, the Magistrate Judge recommended denying

---

[1] Pursuant to 28 U.S.C. § 636(b)(1)(A), the Magistrate Judge ruled on the City's two motions to exclude testimony. *Rec. Dec.* at 3-6 (denying Motion of Defendant City of Bangor, Maine to Exclude All Proposed Expert Opinion Testimony of Joseph L. Auster (Docket # 26) and granting in part Motion of Defendant City of Bangor, Maine to Exclude All Proposed Expert Opinion Testimony of Barry P. Justice (Docket # 31)). Because neither party has attempted to show these rulings are "clearly erroneous or contrary to law," the Court does not address them. 28 U.S.C. § 636(b)(1)(A).

that portion of the City's motion regarding what the City refers to as a "set-off"[2] against Aquila's carrying costs incurred during the period after the incident and before the eventual sale. *Id.* at 18-19. The Magistrate Judge determined that the parties effectively agreed that these lease payments should be deducted from Aquila's damages, but recommended denying summary judgment because disputed facts exist with respect to the amount of the deduction. *Id*.

The City does not object to any portion of the Recommended Decision.[3] *Resp. of the Def. City of Bangor, Maine to Objections of Aquila, LLC to Magistrate Judge's Recommended Decision on Mots. for Summ J.* (Docket # 79) (*City's Resp.*). Aquila does. *Aquila, LLC's Objection to Portions of Magistrate's Recommended Decision on Mots. for Summ. J.* (Docket # 77) (*Aquila's Obj.*). Aquila objects to the Magistrate Judge's recommendation that the Court wholly deny its motion for summary judgment notwithstanding that "[i]t may well be true that a finding of breach is compelled by this record." *Rec. Dec.* at 20; *Aquila's Obj.* at 1. Aquila also objects to the Magistrate Judge's recommendations that (1) the Court preclude Aquila from recovering its reimbursed repair costs, and (2) the Court not award Aquila damages for both repair costs and diminution in value of the aircraft. Aquila also disagrees with the substance of the Magistrate Judge's discussion of the lost sale of the aircraft for $12,000,000. *Id.* Finally, by urging the Court to enter summary judgment in its favor, Aquila effectively objects to the

---

[2] When the Court encountered the City's "set-off" argument, it expected an allegation that Aquila is indebted to the City. A "setoff" is a "'counter-claim demand which defendant holds against plaintiff, arising out of a transaction extrinsic of plaintiff's cause of action.'" *United Structures of Am., Inc. v. G.R.G. Eng'g, S.E.*, 9 F.3d 996, 998 (1st Cir. 1993) (emphasis omitted) (quoting *Black's Law Dictionary* 1230 (5th ed. 1979)); *Falconer v. Penn Mar., Inc.*, 232 F.R.D. 37, 40 (D. Me. 2005). Employing different terminology, the Court construes the City's argument (and Aquila's concession) to mean, unremarkably, that Aquila may not recover damages for losses it successfully avoided by leasing the aircraft. *See Restatement (Second) of Contracts* § 350(1) (1981).

[3] In addition to the recommendations on the parties' cross-motions for summary judgment, the Magistrate Judge recommended that the Court terminate a motion the City filed in opposition to Aquila's summary judgment motion. *Rec. Dec.* at 20-21; *see Opp'n of the Def. City of Bangor, Maine, to Mot. for Summ. J. of Aquila, LLC and Cross-Motion for Summ. J.* (Docket # 62) (*City's Opp'n*). This recommendation is based on the fact that the City purported to include in its opposition a cross-motion on liability, which the Magistrate Judge determined was untimely. *Rec. Dec.* at 20-21. The City did not object to the Magistrate Judge's recommendation and the Court accepts it, terminating the City's untimely cross-motion for summary judgment on liability.

Magistrate Judge's refusal to recommend partial summary judgment on the issue of liability. *Id.* at 1, 11-12.

## II. DISCUSSION

### A. Partial Summary Judgment on Liability

On two occasions, the Magistrate Judge remarked that this case is well-suited for partial summary judgment on liability. *Rec. Dec.* at 20 (noting it "may well be true that a finding of breach is compelled by this record" and that it may be "fair to find, as a matter of law, that breach is established"). She stopped short of making this recommendation for three reasons: First, in her view, a jury would need to view all the evidence in the summary judgment record to determine an appropriate damage award, which leads to the conclusion that the entire case should go to the jury. Second, the advisory committee's note to the 2007 amendments to Rule 56 indicate that a court may, in the exercise of its discretion, withhold summary judgment even where no genuine issue of material fact exists. Finally, Aquila is not entitled to judgment at this time because disputed facts remain regarding the exact amount of damages caused by the breach. *Rec. Dec.* at 20 & n.12. Aquila has objected to the Magistrate Judge's recommendation "that the Court deny [its] motion even as to breach." *Aquila's Obj.* at 11.

The reasons underlying the recommendation to withhold even partial summary judgment are less compelling to the Court than they were to the Magistrate Judge. First, it would seem that whatever impact the ruling on the motion for summary judgment may have on the evidence admitted at trial should be left to the trial judge, and should not provide a basis for denying the relief to which a party would otherwise be entitled. Second, although the advisory committee's note suggests courts may exercise their discretion to deny summary judgment where it could be granted, the note also cautions that "courts will seldom exercise the discretion to deny summary judgment when there is no genuine issue as to any material fact." Fed. R. Civ. P. 56 advisory

5

committee's note, 2007 amendments; *see* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2728, at 527 (3d ed. 1998) (instructing that the discretion be exercised "sparingly"). The Supreme Court articulated the competing interests:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Finally, Rule 56 specifically provides for entry of partial summary judgment where a party is entitled to judgment on liability but not damages. Fed. R. Civ. P. 56(d)(2) ("An interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages.").

The Court turns to whether Aquila is entitled to partial summary judgment on liability for breach of contract. Aquila's theory of liability is that the City breached an implied contract between the parties that the City would "properly service" Aquila's aircraft in exchange for valuable consideration. *Aquila's Mot.* at 2, 4. Aquila claims that the City's employees failed to perform the contract when they overfilled the aircraft's lavatory with fluid. *Id.* at 4-5. Aquila's sole cause of action is breach of contract and the analysis should be straightforward. However, Aquila muddies the waters by attempting to prove the City acted negligently by failing to comply with "the standard of care." *Aquila's Mot.* at 5.

In response, the City seizes on Aquila's diversion and contends that issues of material fact exist as to whether the City breached the standard of care. *City's Opp'n* at 4. Apparently, the City appears to believe that the applicable standard of care derives from the implied warranty of workmanlike performance, which requires performance in a "'workmanlike manner,' which is defined as 'the quality of work that would be done by a worker of average skill and

6

intelligence.'" *Id.* at 2 (quoting *Wimmer v. Down E. Props., Inc.*, 406 A.2d 88, 93 (Me. 1979)). Armed with their respective standards of care (perhaps different, perhaps not), the parties spar about facts in the record that are probative of breach—not of an existing contract—but of an undetermined standard of care.

The problem with this approach is that Aquila brought this action in contract, not in tort. The significant difference between the two causes of action is that "any action to enforce a contract depends on the existence of the contract itself." *Sullivan v. Porter*, 2004 ME 134, ¶ 12, 861 A.2d 625, 631. It is unremarkable, therefore, that in an action for breach of contract "the plaintiff bears the burden to demonstrate: (1) the existence of a valid and binding contract between the parties; (2) that one party breached its duties with respect to the contract; and (3) that the other party suffered damages resulting from the alleged breach." *Caraboolad v. Indian Ridge Homeowners Alliance*, Nos. RE-06-50, RE-06-58, 2007 Me. Super. LEXIS 156, at *12-13 (Me. Super. Ct., Yor. Cty., Aug. 1, 2007) (Brennan, J.) (internal quotation and alteration omitted); *Wetmore v. MacDonald, Page, Schatz, Fletcher & Co.*, 476 F.3d 1, 3 (1st Cir. 2007). The essential factual question is whether the City breached the contract for ordinary lavatory service when its employees pumped approximately one hundred gallons of lavatory fluid into Aquila's aircraft. *See Millien v. Colby Coll.*, 2005 ME 66, ¶ 8, 874 A.2d 397, 402. If there exist no genuine issue of material fact with respect to breach, Aquila is entitled to summary judgment.

In the summary judgment record, the City admits that one of its employees, Kent Guay, arrived at the aircraft partway through the lavatory service and pushed a button with the intention of pumping only two gallons of lavatory fluid into the aircraft. *Statement of Uncontested Material Facts of the Def. City of Bangor, Maine, in Supp. of its Mot. for Summ. J.* ¶ 23 (Docket # 34) (*City's SMF*). Mr. Guay then busied himself with the waste hose while, unbeknownst to

7

him, a far greater volume of lavatory fluid flowed steadily into the aircraft. *Id.* He and William Theriault agreed that a switch on the lavatory truck that activates the lavatory fluid pump was stuck in the "on" position when the lavatory overfill was discovered. *Id.* The City also admits that Sherman Rogers, the owner of Aquila, testified that he was present during the servicing incident, saw the lavatory "literally burbling over with blue water," saw interior aircraft lights that were lit and "completely submerged" in the blue water, and spent "an hour and a half attempting to mop up the excess lavatory fluid and waiting for it to drain from the Aircraft." *Aquila, LLC's Statement of Material Facts Not in Dispute* ¶¶ 40-42 (Docket # 36) (*Aquila's SMF*); *Opposing Statement of Material Facts of the City of Bangor, Maine in Opp'n to Aquila's Mot. for Summ. J. and Statement of Additional Facts* ¶¶ 40-42 (Docket # 63).

The City attempts to avoid summary judgment on liability by raising facts that tend to (1) minimize Mr. Guay's culpability, (2) minimize the extent of his training and the consequences of deviations therefrom, (3) suggest that he performed in a workmanlike manner, and (4) suggest that Aquila cannot prove why the lavatory fluid pump switch was stuck in the "on" position. *City's Opp'n* at 4-8. The Court is not persuaded that these facts, even if accepted as true, generate a triable issue as to breach of contract.[4] The City admitted that in the course of performing under a contract with Aquila, its employees rendered defective performance. "When performance of a duty under a contract is due any non-performance is a breach." *Restatement (Second) of Contracts* § 235(2) (1981); *People's Heritage Sav. Bank v. Recoll Mgmt., Inc.*, 814 F. Supp. 159, 164 (D. Me. 1993) (applying Maine law). Moreover, "[n]on-performance includes

---

[4] The City pleaded only two "affirmative defenses," neither of which is sufficient to defeat liability: (1) "The alleged over-pumping of fluid did not occur as a result of the City's failure to perform its contractual obligations in a skillful manner," and (2) "The damages claimed by the Plaintiff were not contemplated by the parties at the time the parties entered into the alleged contract." *Answer of Def., City of Bangor, Maine, to Compl.* at 3-4 (Docket # 11) (*Answer*). As for the first, the Court is unaware of any authority for the proposition that defective performance of contractual obligations in a skillful manner is a defense to liability for breach of contract. As for the second, the City's invocation of an historic limitation on damages is no defense to liability.

8

defective performance," and breach results "even if the party who does not fully perform was *not at fault* and even if the defect in his performance was not substantial." *Restatement (Second) of Contracts* § 235 cmt. b (1981) (emphasis added); *see Flanders & Medeiros, Inc. v. Bogosian*, 65 F.3d 198, 204 n.9 (1st Cir. 1995) ("[G]ood faith is not a defense to a breach-of-contract claim."); E. Allan Farnsworth, *Contracts* § 12.8, at 761 (4th ed. 2004) ("[C]ontract law is, in its essential design, a law of strict liability, and the accompanying system of remedies operates without regard to fault."). From the Court's perspective, it is immaterial whether the lavatory overfill was willful, reckless, grossly negligent, merely negligent, inadvertent, or un-workmanlike. The Court therefore agrees with the Magistrate Judge that "a finding of breach is compelled by this record," *Rec. Dec.* at 20, and enters an interlocutory summary judgment on liability alone. Fed. R. Civ. P. 56(d)(2).[5]

### B. The Reimbursed Repair Costs

There is no dispute that after the incident Aquila flew the aircraft to Duncan Aviation in Michigan for cleaning and that Duncan invoiced Aquila for $127,608.45. *City's SMF* ¶¶ 24, 27; *Aquila, LLC's Opposing Statement of Material Facts, and Objections* ¶¶ 24, 27 (admit) (Docket # 60) (*Aquila's Opposing SMF*); *Aff. of John C. Wyman in Supp. of Mot. of the Def., City of Bangor, Maine for Summ. J.*, Exs. N-O (Docket #s 35-15, 35-16) (*Wyman Aff.*). Likewise, there is no dispute that Aquila submitted a proof of loss in the amount of $127,608.45 to its insurer, United States Aviation Underwriters ("Insurer"), which paid Aquila in full. *City's SMF* ¶¶ 43-

---

[5] The First Circuit clarified that a "partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial." *Alberty-Velez v. Corporacion de P.R. para la Difusion Publica*, 361 F.3d 1, 6 n.5 (1st Cir. 2004). In addition, a district court "retains jurisdiction to modify a Rule 56(d) order at any time," provided it informs the parties and gives them an opportunity to present relevant evidence. *Id.* (internal quotation and citations omitted); *Colasanto v. Life Ins. Co. of N. Am.*, 100 F.3d 203, 210 (1st Cir. 1996) (explaining that Rule 56(d) "empowers a court to specify (and set to one side) facts that are without substantial controversy, . . . [and] permits the court to retain full power to make one complete adjudication on all aspects of the case when the proper time arrives" (internal quotation omitted)).

9

44; *Aquila's Opposing SMF* ¶¶ 43-44 (admit, qualify). The question is whether Aquila can now recover this amount from the City as damages for breach of contract.

### 1.     The Positions of the Parties and the Recommended Decision

The City moved for summary judgment on this aspect of the damage claim on the theory that Rule 17(a), which requires that actions "'must be prosecuted in the name of the real party in interest,'" allows only the Insurer to pursue this so-called "claim for reimbursement" for the Duncan Aviation repairs. *City's Mot.* at 3-4 (quoting Fed. R. Civ. P. 17(a)(1)). Observing that the Insurer reimbursed Aquila for these repairs and that Aquila completely assigned to the Insurer its claim for this loss, the City argued that Aquila was not the real party in interest with respect to this claim and summary judgment should issue in favor of the City.

In response, Aquila emphasized that the amount it spent on the repairs was but one portion of the total damages that flowed from the City's breach and that it sustained an unreimbursed loss in excess of the amount of its Insurer's reimbursement. *Aquila's Opp'n to Bangor's Mot. for Summ. J.* at 4 (Docket # 56). Aquila contended that because it sustained an unreimbursed loss, it is the real party in interest with respect to its claim for damages for breach of contract. *Id.* It argued that it is entitled, as the real party in interest, to prosecute its claim to judgment and recover from the City damages for breach of contract, which include recovery of the amount it spent on repairs.

The Magistrate Judge agreed with the City and recommended that the Court enter summary judgment precluding Aquila from recovering the cost of these repairs. *Rec. Dec.* at 17. This recommendation is based on the theory that, because it assigned to its Insurer its right to recover the insured portion of the loss, Aquila is not the real party in interest on this portion of the claim. *Id.* The Magistrate Judge observed that the Insurer's "rights by way of assignment

are severable from this action and may be pursued by the insurer in a separate action (or through joinder, which would be untimely at this juncture)." *Id.* (citing *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 81-82 (2d Cir. 2005)). Finally, the Magistrate Judge noted that it was beyond the scope of her recommendation to address the impact a grant of summary judgment on this issue may have on a future damages award, "either in terms of instructing the jury on damages or in terms of reducing any award stated in its verdict." *Id.* Aquila strenuously objects, reiterating its argument that the cost of repairs was but one portion of the damages it seeks to recover, and that its partial assignment of its claim for breach of contract to the Insurer has no bearing on its status as the real party in interest. *Aquila's Obj.* at 2-5.

### 2. Rule 17 and Ratification

The deceptively simple command of Rule 17 is that an action "must be prosecuted in the name of the real party in interest." The First Circuit has explained that the purpose of the real party in interest requirement is "to protect a defendant from facing a subsequent similar action brought by one not a party to the present proceeding and to ensure that any action taken to judgment will have its proper effect as res judicata." *Prevor-Mayorsohn Caribbean, Inc. v. P.R. Marine Mgmt., Inc.*, 620 F.2d 1, 4 (1st Cir. 1980); *Allwaste Envtl. Servs./N. Atl., Inc. v. Pastore*, 911 F. Supp. 29, 31 (D. Me. 1996).

> The Rule also provides that a
>
> court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3). Though not in the context of an insurer, Judge Hornby tackled the ratification question in *Allwaste*, where the defendant contended that the plaintiff, whose

11

liabilities had been satisfied by a third party, could not bring a lawsuit, because it had suffered no loss. *Allwaste*, 911 F. Supp. at 31. The third party filed a document in which he ratified the plaintiff's actions in bringing the lawsuit, agreed to be bound by the lawsuit, and waived any right to pursue subrogation rights outside the lawsuit. *Id.* Judge Hornby observed that the purpose of Rule 17(a) is "to protect a defendant . . . from facing a subsequent similar action brought by one not a party to the present proceeding . . . and to ensure that any action taken to judgment will have its proper effect as res judicata." *Id.* (internal quotation omitted). In view of the ratification and the policy underlying the ratification provision of Rule 17(a), Judge Hornby found no prejudice had accrued to the defendant and, "[i]n the absence of prejudice, there is no reason to prevent the ratification." *Id.*

A similar logic applies here. Aquila has been reimbursed in part for its asserted losses in this case by its Insurer. The City can rightfully express concern about whether absent the insurer's presence as a party in the lawsuit, it may be subject to a second claim based on the same set of facts, or more unlikely, a separate claim by the Insurer for the amounts it paid to Aquila.[6] But, on April 22, 2009, after the Recommended Decision, Aquila filed an "Assignment" signed by both Aquila and the Insurer in which the Insurer assigned to Aquila its right to seek recovery for policy benefits stemming from the incident, and expressly acknowledged that Aquila had the right to sue in its name, and in which Aquila agreed to pay

---

[6] As just noted, the policy underlying the real party in interest requirement is to prevent the proliferation of multiple suits and to accord appropriate res judicata effect to litigation. As a practical matter, it is unclear what the City gains by a judicial carve-out of the Insurer's claim. If the Recommended Decision were affirmed, the only way the Insurer could judicially require reimbursement from the City for the amounts it paid Aquila would be to initiate a separate lawsuit on identical grounds, claiming similar damages, and the City would be back in court defending virtually the same claim all over again with a different named plaintiff, the very procedure Rule 17(a) is designed to guard against. So long as the City is protected against a second suit for the same damages, common sense dictates that if the Insurer has evidenced its willingness to be bound by the pending litigation, there is no useful purpose in requiring the filing of a separate lawsuit.

12

Insurer the amount less attorney's fees and costs, reflecting the damages for repairs to the aircraft by Duncan Aviation. *Assignment* (Docket # 78-2).

As Judge Hornby observed, the "determination of whether ratification is appropriate is discretionary." *Allwaste*, 911 F. Supp. at 31. Although the document does not use the term "ratify", the Court accepts the Assignment as an effective ratification under Rule 17(a). The Assignment clarifies that the City will not be held liable twice. *Prevor-Mayorsohn*, 620 F.2d at 4 (stating that the purpose of Rule 17(a) is to protect a defendant "from facing a subsequent similar action brought by one not a party to the present proceeding . . . and to ensure that any action taken to judgment will have its proper effect as res judicata").

There is authority that limits ratification to "avoid forfeiture in situations in which it is unclear at the time the action is filed who had the right to sue and it is subsequently determined that the right belonged to a party other than the party that instituted the action." *See Del Re v. Prudential Lines, Inc.*, 669 F.2d 93, 96 (2d Cir. 1982). Here, however, if it were to reach the issue, the Court is not at all clear that in these circumstances Aquila should be prevented from collecting on the Insurer's claim as well as its own. Wright and Miller state:

> The insurer who pays part of the loss is only partially subrogated to the rights of the insured. This may occur when the loss exceeds the coverage . . . . The respective rights of the party in this situation parallel those when there has been a partial assignment. Either the insured or the insurer may sue. Thus, if the insured brings suit, the insurer who is partially subrogated may intervene in the action to protect its pro rata share of the potential recovery. If either sues and the other does not voluntarily join or intervene, defendant may protect himself from multiple lawsuits by having the absent party joined.

6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1546 (2d ed. 1990); *State Farm Mut. Liab. Ins. Co. v. United States*, 172 F.2d 737, 739 (1st Cir. 1949); *Gannett v. Pettegrow*, 224 F.R.D. 293, 294 (D. Me. 2004).

This is further complicated by the intersection of federal procedural and state substantive law. The state of Maine has adopted the common fund doctrine, which holds that "when a fund is created to which more than one party is entitled each party must pay a share of the expenses incurred in creating the fund, including reasonable attorney fees." *York Ins. Group v. Van Hall*, 1997 ME 230, ¶ 4, 704 A.2d 366, 368; Jack H. Simmons, Donald N. Zillman & David D. Gregory, *Maine Tort Law* § 18.04 (2004). In *York*, a plaintiff claimed medical expenses against a tortfeasor that included amounts for which the plaintiff had been reimbursed through the medical payments provision of her automobile insurance policy, and the Law Court held that her recovery of those benefits created a common fund from which the insurer was entitled to receive reimbursement. *Id.* Whether Maine's common fund doctrine would extend to Aquila's situation is unanswered, but it is at least sufficiently unclear to call into play the ratification provisions of Rule 17(a).

Moreover, whether the City would be entitled to require the Insurer to join this litigation as a party is not before the Court, because it is not the relief the City sought. The City demanded that the insured portion of the claim be dismissed. *City's Mot.* at 4 (stating that the City is "entitled to summary judgment on Aquila's claim for reimbursement of the Duncan aviation bills of $127,608.45 for post-incident inspection and cleaning of the Aircraft"). Even the most rigorous interpretation of Rule 17(a) would allow the missing insurer to be impleaded in the action before dismissing the claim. Fed. R. Civ. P. 17(a) (stating that a "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action"). In any event, although there is little direct authority in this circuit, other circuits suggest that ratification obviates the need to add a subrogated insurer as a party. *Agri-*

*Mark, Inc. v. Niro, Inc.*, 190 F.R.D. 293, 296 (D. Mass. 2000); *see, e.g.*, *HB Gen. Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1196 (3d Cir. 1996); *Levy Jewelers, Inc. v. ADT Sec. Sys., Inc.*, 187 F.R.D. 701, 702 (S.D. Ga. 1999); *Prosperity Realty, Inc. v. Haco-Canon*, 724 F. Supp. 254, 258 (S.D.N.Y. 1989).

Finally, the City has identified no prejudice that will flow from acceptance of the ratification, and in fact, doing so seems to inure to its benefit by avoiding sequential litigation on essentially the same claim. *Maddalone v. Okada Shosen, KK*, 756 F.2d 886, 887 (1st Cir. 1985); *Marston v. Am. Employers Ins. Co.*, 439 F.2d 1035, 1041 (1st Cir. 1971). This is particularly true in this case, since it appears from the record that "from the outset, [the City] knew who were the real parties in interest and what their claims were." *Marston*, 439 F.2d at 1041. In the absence of prejudice and in the exercise of its discretion, the Court accepts the Insurer's ratification under Rule 17(a) of Aquila's cause of action for damages the Insurer paid under its insurance contract.

### C. The Lost Sale of the Aircraft

In its motion for summary judgment, the City discussed at length the infirmities of the sale contract that Aquila lost as a result of the servicing incident. This discussion culminated in a request for summary judgment that Aquila is not entitled to recover (1) the difference between the lost sale price and the actual sale price, (2) the amount Aquila spent on repairs and inspection prior to the actual sale,[7] and (3) carrying costs Aquila would not have incurred but for the lost sale. *City's Mot.* at 4. Aquila moved for summary judgment with respect to the same items. *Aquila's Mot.* at 6.

The Magistrate Judge determined generally that Aquila may not recover special damages relating to the lost sale of the aircraft because the sale was not within the contemplation of the

---

[7] These repairs were in addition to the Duncan Aviation repairs.

15

parties. *Rec. Dec.* at 14-15 (citing *Williams v. Ubaldo*, 670 A.2d 913, 917-18 (Me. 1996)). The Magistrate Judge did not, however, recommend any particular disposition of the pending motions in light of this determination. The extent of the Magistrate Judge's observation is simply that "there is no apparent basis for special damages in this case." *Rec. Dec.* at 18. Because factual disputes prevented judgment as a matter of law that any of the items of damage listed above are general or special damages, the special damages determination is something of a loose end. *See Rec. Dec.* at 15 n.5, 16 n.6; *but see Answer* at 4 ("The damages claimed by the Plaintiff were not contemplated by the parties at the time the parties entered into the alleged contract.").

To the extent the issue was unresolved, however, Aquila has resolved it by expressly waiving the argument. Aquila does not now argue that the sale was within the contemplation of the parties. Instead, Aquila has affirmed that it does not seek special damages. *Aquila's Obj.* at 9 (stating that Aquila "is simply seeking directly foreseeable damages resulting from Bangor's negligent servicing of the Aircraft, *i.e.*, the reduction in value associated with exposure to massive amounts of corrosive lavatory fluid").

In the absence of any objection to the Magistrate Judge's determination that the lost sale of the aircraft was unforeseeable, the Court adopts the Magistrate Judge's analysis. Aquila is bound to its concession that the lost sale was unforeseeable. Fed. R. Civ. P. 56(d)(1); *see supra* note 5. Because the Court agrees with the Magistrate Judge that disputed facts with respect to the magnitude and character (i.e., general or special) of certain items of damage remain, the Court concludes that summary judgment on any item of damage is inappropriate.

### D. Repair Costs Plus Diminution in Value

In its summary judgment motion, Aquila contended that because recovery of repair costs alone will not make it whole, it may also recover an amount that reflects the diminution in the

value of the aircraft.  *Aquila's Mot.* at 4.  The Magistrate Judge disagreed, stating that Aquila will not be able to "stack repair costs and other incidental costs on top of a diminution in value recovery."  *Rec. Dec.* at 15 (citing *VanVoorhees v. Dodge*, 679 A.2d 1077, 1081 (Me. 1996)).  In response, Aquila quotes at length from an opinion of the Supreme Judicial Court discussing the issue in the context of a construction contract dispute:

> "In many cases the repairs fully correct the defects caused by the contractor's breach and the award of damages based on the cost to complete or repair makes the injured party whole.  In other cases, however, notwithstanding remedial measures undertaken by the injured party, there remains a diminution in value of the property.  In such a case, awarding only the costs of remedying the defects will not fully compensate the owner for the damages suffered by him. . . . Subject to the limitations of avoidability and unforeseeability, an injured party is entitled to recover for all loss actually suffered as a result of the breach.  *Restatement (Second) of Contracts* § 347 comment c (1981)."

*Aquila's Obj.* at 10 (alteration in original) (quoting *Marchesseault v. Jackson*, 611 A.2d 95, 98 (Me. 1992)).  Again, because the Magistrate Judge did not recommend that the Court grant any relief as a consequence of her determination that repair costs and diminution in value are exclusive measures of damage, the determination is somewhat of a loose end.

The Court concludes that the issue is not ripe for resolution.  With the exception of the lost sale element of the original damage claim that Aquila has conceded, all motions for summary judgment as to damages are denied.  With the exception that it is bound to its concession that the lost sale was unforeseeable, Aquila is free to attempt to convince the jury that repair costs alone will not compensate it "for all losses actually suffered as a result of the breach." *Lee v. Scotia Prince Cruises Ltd.*, 2003 ME 78, ¶ 22, 828 A.2d 210, 216.  On the other hand, the City is free to argue that an award of anything in excess of actual repair costs would result in a windfall, or would be speculative, or inconsistent with the Court's partial summary judgment on foreseeability.

### III.   CONCLUSION

The Court ADOPTS IN PART and REJECTS IN PART the Magistrate Judge's Recommended Decision on Motions for Summary Judgment and Memorandum of Decision on Motions to Exclude (Docket # 75).  The Court DENIES Motion of the Defendant City of Bangor, Maine, for Summary Judgment (Docket # 33) and Motion of Defendant City of Bangor, Maine for Oral Argument (Docket # 66).  The Court GRANTS IN PART Aquila, LLC's Motion for Summary Judgment (Docket # 27); pursuant to Rule 56(d)(2), the Court enters an interlocutory summary judgment that the City of Bangor is liable to Aquila, LLC on Count I of the Complaint.  The Court further enters pursuant to Rule 56(d)(1) an interlocutory summary judgment that the contemplated sale of the aircraft from Aquila, LLC to Aero Toy Stores was unknown, unforeseen, and unforeseeable by the City of Bangor and is not a proper element of Aquila's damage claim.  Finally, pursuant to the Magistrate Judge's recommended decision, the Court STRIKES WITHOUT OBJECTION the City of Bangor's Cross-Motion for Summary Judgment (Docket # 68).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 3rd day of August, 2009