UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| AQUILA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-08-64-B-W |
| | ) | |
| CITY OF BANGOR, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF LOST RENTAL INCOME**

The Court grants the Defendant's Motion to Exclude Evidence of Lost Rental Income on the ground that the Plaintiff did not disclose this element of damage until it filed its pretrial memorandum; however, the Court reserves the question of remedy for further argument.

**I.   STATEMENT OF FACTS**

   **A.   The Motion**

On September 28, 2009, the City of Bangor (City) moved *in limine* to exclude evidence of Aquila, LLC's (Aquila) claim of lost rental income allegedly resulting from damage the City caused to Aquila's Cessna aircraft on May 24, 2007. *Mot.* in Limine *of Def. City of Bangor, Maine to Exclude Evidence of Lost Rental Income* (Docket # 105) (*Def.'s Mot.*). Aquila responded on October 1, 2009. *Aquila's Opp'n to Bangor's* in Limine *Mot. Seeking to Exclude Evidence of Lost Rental Income* (Docket # 117) (*Pl.'s Resp.*). The Court held a final pretrial conference on October 5, 2009 and gave the City an opportunity to supplement the motion *in limine*. On October 6, 2009, the City filed a supplemental motion and upon Order of the Court, on October 7, 2009, Aquila responded. *Supplemental Mem. of Def. City of Bangor, Maine in*

*Support of Mot.* in Limine *to Exclude Evidence of Lost Rental Income* (Docket # 125) (*Def.'s Supplemental Mem.*); *Aquila's Reply Brief in Opp'n to Bangor's* in Limine *Mot. Seeking to Exclude Evidence of Lost Rental Income* (Docket # 127) (*Pl.'s Supplemental Resp.*). The parties selected a jury on October 5, 2009 and trial is scheduled to begin on October 13, 2009.

### B. The Lawsuit

On February 26, 2008, Aquila filed suit against the City alleging the following damages from a breach of contract: 1) Loss of a failed sale; 2) pre-buy inspection costs; 3) loan costs; 4) insurance costs; 5) reduction in value in the aircraft; 6) repair bills; 7) incidental costs, including fuel costs to fly for repairs; 8) attorney's fees; 9) court costs; and 10) such other relief as the Court deems appropriate. *Compl.* (Docket # 1). After the City answered, the Court issued a Scheduling Order, setting May 2, 2008 as the deadline for Rule 26(a)(1) disclosures. *Scheduling Order* at 2 (Docket # 12). The parties engaged in discovery and filed dueling motions for summary judgment. *Aquila, LLC's Mot. for Summ. J.* (Docket # 27); *Mot. of the Def. City of Bangor, Maine for Summ. J.* (Docket # 33) (*Def.'s Mot. for Summ. J.*). On August 3, 2009, the Court granted partial summary judgment in favor of Aquila on liability, but concluded that there remained triable issues on damages. *Recommended Decision on Mots. For Summ. J. and Mem. of Decision on Mots. To Exclude* (Docket # 75); *Order Adopting in Part and Rejecting in Part the Recommended Decision of the Magistrate Judge* (Docket # 80).

On August 7, 2009, the case was scheduled for trial on the October 2009 jury trial list. On September 4, 2009, Aquila filed a final pretrial memorandum in which it listed as an element of its damages the "loss of the ability to use and rent the Aircraft during the time the repairs were being performed." *Aquila, LLC's Pretrial Mem.* at 2 (Docket # 84). More specifically, Aquila asserted:

2

> In addition to the cost of repairs and the diminution in value of the Aircraft, Aquila is entitled to recover for the time the Aircraft was unavailable for use and lease while it was being repaired and inspected. Aquila leased the Aircraft for $86,125 per month during the relevant time period. The Aircraft was unavailable for lease during the time period from May 24, 2007 until June 21, 2007 due to the initial repairs. The Aircraft was also unavailable for lease during the time period from September 10, 2007, until December 17, 2007 when the repairs associated with the prepurchase inspection were being performed. The loss of rental income as a result of Bangor's improper servicing of the Aircraft was in excess of $330,000.

*Id.* at 2-3. The City filed a pretrial memorandum but did not mention Aquila's lost rental income claim as an element of damage. *Pretrial Mem. of the Def. City of Bangor, Maine* (Docket # 85). The September 14, 2009 Report of Final Pretrial Conference referred to a claim of loss of rental income as an element of Aquila's damages. *Report of Final Pretrial Conference and Order* at 2 (Docket # 90).

On September 28, 2009, the City moved *in limine* to exclude lost rental income as an element of Aquila's damages. *Def.'s Mot.* Although the City mentioned that Aquila had disclosed the lost rental income for the first time in its pretrial memorandum, the basis for the City's Motion *in Limine* was not a discovery violation but rather that Aquila had received full rental payments from Fine Light, Inc. during the period of claimed lost income. *Id.* at 2. Aquila responded on October 1, 2009 and argued that Fine Light stands in Aquila's shoes for purposes of making a lost rental claim. *Pl.'s Resp.* The City raised the question at the final pretrial conference on October 5, 2009, the same day the jury was selected, and after giving its initial impressions, the Court allowed the City to file a supplemental memorandum.

On October 6, 2009, the City filed a supplemental memorandum, squarely contending that Aquila had failed to disclose its lost rental income claim until the September 4, 2009 pretrial memorandum and that this element of its damage claim should be excluded because of Aquila's

3

discovery violation. *Def.'s Supplemental Mem.* The City attached to its motion the following documents:

1) Aquila's initial correspondence with the City dated January 22, 2008;

2) Aquila's Complaint;

3) Aquila's May 2, 2008 initial disclosure;

4) Aquila's Motion for Summary Judgment;

5) Aquila's Statement of Material Facts (Docket # 36); and,

6) A portion of the October 24, 2008 deposition of Aquila LLC.

*Id.* at Ex. A-F. The attached documents confirm that Aquila did not mention lost rental income as an element of its damages in its initial demand letter, its Complaint, its initial disclosure, its listing of damages in its Motion for Summary Judgment, its Statement of Material Facts Not in Dispute, and the portion of the Aquila corporate deposition the City supplied with the motion. The City concludes that

> Aquila did not put the City on notice of its claim for lost rental income until filing its Final Pretrial Memorandum on September 4, 2009. Because the Plaintiff had never asserted a lost rental claim during discovery, the Defendant was never on notice that this was a claim that needed to be investigated. It would be fundamentally unfair for the Plaintiff to wait until the eve of trial to assert a substantial claim for damages.

*Id.* at 3. The Court ordered the Plaintiff to respond quickly. *Order re: Motion in Limine Regarding Lost Rental Income* (Docket # 126).

On October 7, 2009, Aquila responded. *Pl.'s Supplemental Resp.* Aquila asserts that the City must "identify discovery requests seeking the information said to have been withheld, requests to which Aquila did not adequately respond." *Id.* at 1. Aquila notes that the City failed to serve any interrogatories or requests for production of documents, and instead, the City wrote Aquila from time to time, asking for the voluntary production of documents and Aquila says it

4

responded in good faith by voluntarily producing the requested documents. *Id.* at 1-2. Aquila concludes that "having failed to avail itself of the procedures set forth in the Federal Rules of Civil Procedure for obtaining discovery, Bangor cannot now seek a Rule 37 discovery sanction, particularly one as drastic as excluding otherwise relevant and admissible evidence of damages." *Id.* at 2.

Aquila also asserts it gave the City sufficient information about its rental agreement with Fine Light to put the City on notice of its loss of rental income claim. Aquila says that as part of its voluntary production of documents, it produced a lease between Aquila and Fine Light, which tabulated the period during which the aircraft was not operational as a result of the City's breach. *Id.* Further, Aquila points to the deposition of Sherman Rogers, the principal of both Fine Light and Aquila, and notes that the City's counsel questioned Mr. Rogers about loss of use of the aircraft. *Id.* at 2-3. Finally, Aquila observes that, contrary to the City's assertions, Aquila did refer to loss of rental income in its opposition to the City's Motion for Summary Judgment. *Id.* at 3. Contending that a "plaintiff often finds that the opponent's discovery, and the work that goes into developing responses thereto, is helpful in detailing the plaintiff's own case," Aquila "wonders whether Bangor made a strategic decision not to allow the City's discovery to articulate for its adversary the details of this damages evidence." *Id.* at 4. Aquila concludes that there is "no legitimate basis for Bangor now to assert that it didn't know Aquila would seek damages for its loss of use of the Aircraft while it was inoperational. And insofar as the City asserts a discovery violation, there is no Request for Production and no Interrogatory at all." *Id.*

## II. DISCUSSION

### A. A Rule 26(a)(1)(A)(iii) Violation

Under Rule 26(a)(1)(A)(iii), Aquila was required to provide upon initial disclosure the following:

> A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based . . . .

Fed. R. Civ. P. 26(a)(1)(A)(iii). The Court set May 2, 2008 as the date for Aquila's initial disclosure. *Scheduling Order* at 2. Aquila's May 2, 2008 initial disclosure did not set forth a "computation of each category of damages," and instead expressly referred to the Complaint, stating that it "spells out each category of damages claimed in this action. Documents supporting such claims have been previously provided to you." *Def.'s Supplemental Mem.* at Ex. C. As the Complaint made no reference to any claim for lost rental income, Aquila's initial disclosure was inadequate to preserve this element of its damage claim.

Aquila's main contention is that the City's failure to file a request for production of documents somehow justifies its failure to comply with the automatic discovery provisions of the rules. This excuse rings hollow since "[s]ubparagraph (C) imposes a burden of disclosure that includes the functional equivalent of a standing Request for Production under Rule 34." Fed. R. Civ. P. 26 advisory committee's notes (1993). Aquila's attempt to blame the City for depriving it of the opportunity to hone its damages claim by failing to file formal discovery is specious and ignores changes in the automatic nature of the rules of discovery that have been effective since 1993. Aquila clearly violated its initial disclosure obligations under Rule 26(a)(1)(A)(iii). The Court turns to the question of remedy.

### B. Rule 37(c): Substantial Justification or Harmlessness

Rule 37(c) describes the typical remedy for the failure to disclose and the circumstances when such a failure may be justified:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). The Court has rejected Aquila's attempt to justify its violation of its affirmative initial discovery obligations by shifting blame to the City. This leaves whether Aquila's failure was harmless.

Aquila asserts that, although failing to allege it, Aquila otherwise supplied the City with information about the lost income claim. Aquila first points to its production of the lease between Aquila and Fine Light.[1] But there is nothing in the record that reflects when Aquila supplied the lease and whether, as Aquila claims, the document denominated periods during which the aircraft was not operational. Aquila next contends that the issue came up during the deposition of Mr. Rogers on questioning by the City's counsel:

> Q. So you didn't suffer a loss of use of the aircraft once Duncan had completed that first round of repairs on account of the incident, with the exception of the period of time when the aircraft was in to have carpet installed in the fall; is that correct?
> A. Loss of use, no. Loss of - - I mean, it was unsightly in the back of the cabin at one point. It also then had a cut where the carpet was. You could tell there had been work done back there. But, the plane operated.

*Pl.'s Supplemental Resp.* at Ex. 1. Aquila's attempt to equate loss of use with loss of rental income is unconvincing. *See* Macauley *v.* Anas, 321 F.3d 45, *52 (1st Cir. 2003) (dismissing

---

[1] The parties seem to disagree factually on this point. The City claims that Aquila "never raised the issue of lost rental income until filing its Final Pretrial Memorandum with the Court on September 4, 2009." *Def.'s Supplemental Mem.* at 1. Aquila states that during the pretrial hearing, the Court "reviewed a document provided to Bangor by Aquila (AQ 000841) reflecting a lease between Aquila and Fine Light for use of the Aircraft, and tabulating the period in which the Aircraft was inoperational [sic] as a result of Bangor's breach." *Pl.'s Supplemental Resp.* at 2. The Court recalls briefly scanning a document that plaintiff's counsel momentarily handed over during the Final Pretrial Conference. The Court does not recall the exact contents of the document and Aquila failed to provide a copy for purposes of this motion. Further, the Court is unaware when Aquila says it supplied this document supposedly itemizing its lost rental claim to the City. If Aquila wants the Court to consider a document, it should have filed it with the Court for careful review and not relied upon a cursory and brief judicial peek during the Final Pretrial Conference.

plaintiff's argument that boilerplate language in the original complaint put defendants on notice of particular claim).

Finally, Aquila refers to statements in its opposition to the City's Motion for Summary Judgment and to a declaration by Sherman Rogers filed in support of Aquila's Motion for Summary Judgment. *Id.* at 3 (quoting *Aquila's Opp'n to Bangor's Mot. for Summ. J.* at 16 (Docket # 56) (*Aquila Opp'n*) and *Decl. of Sherman Rogers* Ex. 1 ¶ 39 (Docket # 41) (*Rogers Decl.*)). In effect, Aquila asserts that these statements establish that the City was aware of the lost income claim. The quoted Aquila statement in the Motion for Summary Judgment reads:

> For much of this time, however, the Aircraft was not available for lease because it was under repair. Fine Light could not use the Aircraft from the time of the accident until June 21, 2007, because the Aircraft was being repaired due to the lavatory over-pumping. The Aircraft was also not available for lease from September 10, 2007, until December 12, 2007, because it was being repaired as part of the pre-buy inspection. There was no real economic benefit from the lease to Aquila or its owners, Sherman Rogers and Fine Light, during the time period the Aircraft was unavailable for lease.

*Aquila Opp'n* at 16. The quoted section in the Rogers Declaration reads:

> Aquila and Fine Light had an agreement in place whereby Fine Light leased the Aircraft from Aquila at a rate of $86,125 per month. During the period from June 1, 2007 until December 12, 2007, when the Aircraft was sold, the Aircraft was unavailable for lease for extended periods of time. Fine Light could not use the Aircraft from June 1 until June 21, 2007 because the Aircraft was being repaired at Battle Creek Following the lavatory over-pumping. The Aircraft was also unavailable for use from September 10, 2007 until December 12, 2007, because it was being repaired as part of the pre-buy obligations. . . .

*Rogers Decl.* at ¶ 39.

The statements must be placed in context. As reflected in its Complaint and in its Motion for Summary Judgment, Aquila claimed from the outset that it was entitled to damages for insurance premiums and loan payments it had made from June 2, 2007, when it was to sell the aircraft to Aero Toy, to December 2007, when it consummated the sale to a different party.

*Compl.*; *Aquila, LLC's Mot. for Summ. J.* at 6-7.  In its Motion for Summary Judgment, the City contended that it was entitled to summary judgment on this portion of Aquila's claim because the City was entitled to set-off these costs by rental amounts Aquila received from Fine Light during this time and the lease amounts Aquila received actually exceeded Aquila's insurance and loan costs.  *Def.'s Mot. for Summ. J*. at 13-17.  Mr. Rogers's declaration and Aquila's argument may have deflected the City's contention that it should be entitled to a full set-off during this interval, but they do not say that Aquila was making a claim for lost lease payments during the same interval.  In fact, the City would have been justified in concluding that Aquila was making no such claim, since according to Rogers's declaration it appeared Aquila continued to receive the lease payments in the monthly amount of $86,125 even during the time the aircraft was under repair.  If an entity had a claim for lost leasing opportunities, it would have been Fine Light, which was not a party to the litigation.

Aquila has not proferred any justification, much less a substantial one, for failing to comply with its discovery obligations in Rule 26(a)(1).  Although the extent to which the non-disclosure was harmless is intertwined with the appropriate remedy, the Court concludes that Aquila has not demonstrated that its discovery violation was harmless under Rule 37(c).  *See, e.g.*, *Macauley*, 321 F.3d at *52 (finding that adding a new theory of liability at the last-minute will likely cause prejudice to the opposing side).

### C.  Remedy

Once a Court concludes that a party has violated its discovery obligations, Rule 37(c) provides that "the party is not allowed to use that information or witness to supply evidence . . . at a trial."  Fed. R. Civ. P. 37(c)(1).  In the next sentence, however, the Rule reads:

> In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and,
> (C) may impose any other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1). Rule 37(b)(2)(A)(i)-(vi) provides a range of sanctions, including directing that the matters "be taken as established for purposes of the action;" prohibiting the disobedient party "from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence;" striking pleadings in whole or in part; staying proceedings until the order is obeyed; dismissing the action; and rendering a default judgment. Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi). The rules accord the Court "a range of sanctions for the untimely production of discovery materials." *See, e.g.*, *Macaulay*, 321 F.3d at *51; *Town Ventures, Inc. v. City of Westfield*, 296 F.3d 42 (1st Cir. 2002) (finding that a district court has significant flexibility in choosing the sanction because "the circumstances attendant to noncompliance are apt to differ widely").

Although the "baseline rule" is mandatory preclusion, preclusion is not a "strictly mechanical exercise." *Santiago-Diaz v. Laboratorio Clinico y de Referencia del Este*, 456 F.3d 272, 276 (1st Cir. 2006). In determining what remedy is appropriate, the Court will consider (1) the history of the litigation; (2) the proponent's need for the challenged evidence; (3) the justification (if any) for the late disclosure; (4) the opponent's ability to overcome its adverse effects—ie., the surprise and prejudice associated with late disclosure; and (5) the impact of the late disclosure on the Court's docket. *See, e.g.*, *Macaulay*, 321 F.3d at *51; *Santiago-Diaz*, 456 F.3d at 276-277. The Court will impose some sanction on Aquila for failing to comply with its most basic discovery obligation on this part of its claim for damages. At this late stage in the proceedings, however, the Court remains undecided what sanction is appropriate; it will depend

upon the nature of the demonstrated prejudice. *See, e.g.*, *Thibeault v. Square D Co.*, 960 F.2d 239, 246 (1st Cir. 1992) (stating that "the focus of a preclusion inquiry is mainly surprise and prejudice, including the opponent's ability to palliate the ill effects stemming from the late disclosure.").

On the one hand, despite Aquila's failures, the City learned a significant amount about the rental of the aircraft, including the terms of the lease between Aquila and Fine Light, the cost of insurance and loan payments for the aircraft, the relationship between Aquila and Fine Light, and the periods of repair. On the other hand, the City may be able to convince the Court that if it had known that Aquila was going to claim lost rental income, it would have undertaken specific discovery, which in the absence of notification, it did not do. In addition, Aquila may be able to suggest an appropriate sanction short of exclusion.

With somewhat limited information, the Court places the parties on notice that it is likely to impose the baseline rule and exclude the lost rental claim, since exclusion is the typical remedy and trial is looming. *See, e.g.*, *Macaulay*, 321 F.3d at *52 (describing the difficult choice the district court would have had to make absent exclusion as either forcing defendants to go to trial unprepared or reopening discovery and vacating the trial assignment). However, in an effort to allow the parties input, the Court will address this issue with counsel at 8:00 a.m. on Tuesday, October 13, 2009.

### III.  CONCLUSION

The Court GRANTS the Defendant's Motion *in Limine* in part, concluding that the Plaintiff has committed a discovery violation that justifies the imposition of a sanction; however, the Court DEFERS the imposition of the sanction pending further argument (Docket # 105).

    SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 9th day of October, 2009